UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| TIMOTHY M. DAWSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No.: 1:18-CV-42-TAV-CHS |
|  | ) |  |
| NURSE KAY STANSBERRY, and | ) |  |
| BENNI RICHINSON, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

Defendants Kay Stansberry and Benni Richinson[1] ("Defendants") have filed a motion for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 34]. Plaintiff has failed to respond to the motion, and the deadline to do so has passed. *See* E.D. Tenn. L.R. 7.1. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**. In the alternative, the Court determines that this case should be **DISMISSED** for failure to prosecute and to comply with orders of the Court pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

### I.   PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, while he was an inmate confined at the McMinn County Detention Center ("MCDC"), Defendants denied him proper medical care to treat his finger

---

[1] Defendants contend that Plaintiff incorrectly identified this Defendant, and that the real party in interest is Bennie Richesin [*See* Doc. 35 n. 1]. However, for purposes of consistency, the Court retains Plaintiff's original identification of this Defendant.

and shoulder [Doc. 2 p. 6]. Specifically, he contends that he was denied medical care after he "smashed [his] little finger almost off" on May 22, 2017, and that Defendants likewise refused him medical care for a tear in his left shoulder, which Defendant contends causes him severe pain [*Id.*].

## II. SUMMARY JUDGMENT EVIDENCE

During all times relevant to the allegations in Plaintiff's complaint, Defendants were nurses at MCDC [Doc. 34-1¶ 3; Doc. 34-2 ¶ 3].

### A. Alleged Finger Injury

On June 27, 2017, Plaintiff alerted an officer that he had hit the wall in his cell, thereby cutting his finger [Doc. 34-4]. The officer treated the cut with Neosporin, bandaging, and ice [*Id.*].

Plaintiff first made a medical request regarding his finger on August 3, 2017 [Doc. 34-1 ¶ 5, p. 5; Doc. 34-2 ¶ 5, p. 5]. In that request, Plaintiff noted that his finger was hurting and not bending correctly, and asked the medical staff "what doctors office" he should visit regarding his finger [Doc. 34-1 p. 5; Doc. 34-2 p. 5]. Defendants responded to the request, advising Plaintiff that, upon his release, he could see the orthopedic hand specialist of his choice [*Id.*]. However, due to his alleged injury, Plaintiff was referred to MCDC's treating physician, Dr. Nathan Trentham, who ordered an x-ray of Plaintiff's left hand and fifth finger [*See* Doc. 34-1 ¶ 6; Doc. 34-2 ¶ 6; Doc. 34-5]. The x-ray occurred on August 31, 2017, and the results showed no significant injury to Plaintiff's left hand or fifth finger [Doc. 37-1]. After Plaintiff received his x-ray results, he filed no further grievances or medical requests regarding his finger [Doc. 34-1 ¶ 7; Doc. 34-2 ¶ 7].

2

### B. Alleged Shoulder Injury

At the time Plaintiff was booked into MCDC, he did not mention a shoulder injury [Doc. 34-3]. Rather, Plaintiff first mentioned to medical staff that his left shoulder was bothering him in May 2017, when he asked to be taken to the emergency room to be "checked out" to avoid having to pay for the medical visit at MCDC [Doc. 34-1 ¶ 8, p. 6; Doc. 34-2 ¶ 8, p. 6]. Defendants responded to the request by notifying Plaintiff that they did not send individuals to the emergency room simply to be "checked out" [Doc. 34-1 p. 6; Doc. 34-2 p. 6]. Outside of this request, Plaintiff did not mention a shoulder injury again in 2017 [Doc. 34-1 ¶ 9, Doc. 34-2 ¶ 9].

On January 3, 2018, Plaintiff filed another medical request complaining of shoulder injury and requesting medication [Doc. 34-1 ¶ 10, p. 7; Doc. 34-2 ¶ 10, p. 7]. Defendants responded to the request by administering Plaintiff 600 milligrams of ibuprofen to treat the alleged injury, and placing Plaintiff on a list to see Dr. Trentham [Doc. 34-1 p. 8; Doc. 34-2 p. 8]. Plaintiff filed an additional medical request complaining of shoulder pain on January 26, 2018 [Doc. 34-1 ¶ 11, p. 11; Doc. 34-2 ¶ 11, p. 11]. Defendants again responded to Plaintiff's medical request, this time administering 800 milligrams of ibuprofen for pain, and consulting with Dr. Trentham, who did not recommend that Plaintiff be medically furloughed for his shoulder issue [*See, e.g.,* Doc. 34-1 ¶ 11; Doc. 34-2 p. 11-13].

On February 5, 2018, Plaintiff filed a medical request asking to see Dr. Trentham and requesting an MRI on his left shoulder [Doc. 34-1 ¶ 12, p. 16; Doc. 34-2 ¶ 12, p. 16]. In response, Defendants placed Plaintiff atop the waiting list to see Dr. Trentham [Doc. 34-1 ¶ 12, p. 17; Doc. 34-2 ¶ 12]. Plaintiff continued to make medical requests

3

throughout the month of February, and, each time, Defendants responded and gave Plaintiff ibuprofen for his alleged pain [Doc. 34-1 ¶ 13 p. 18-22; Doc. 34-2 ¶ 13, p. 16-22]. On February 28, 2018, Plaintiff filed a medical request asking Dr. Trentham to order an MRI of Plaintiff's shoulder [Doc. 34-1 ¶ 14, p. 23; Doc. 34-2 ¶ 14, p. 23]. Plaintiff was then evaluated by Dr. Trentham, who determined that it was not necessary to order on an MRI [Doc. 34-1 ¶ 14; Doc. 34-2 ¶ 14].

Plaintiff filed another medical request complaining of shoulder pain and requesting an MRI on June 4, 2018 [Doc. 34-1 ¶ 15, p. 24; Doc. 34-2 ¶ 15, p. 24]. Defendants responded to Plaintiff's medical request, and an MRI of Plaintiff's shoulder was ordered [Doc. 34-1 ¶ 15, p. 24-25; Doc. 34-2 ¶ 15, p. 24-25]. Plaintiff's MRI occurred on June 11, 2018, and the results came back negative with no significant findings other than minimal fluid in Plaintiff's a.c. joint [Doc. 34-1 ¶ 16; Doc. 34-2 ¶ 15; Doc. 37-2]. After Plaintiff received his MRI results, he made no additional complaints regarding shoulder pain during his incarceration at MCDC [Doc. 34-1 ¶ 17, Doc. 34-2 ¶ 16].

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the

4

nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion

5

simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.  Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added).  "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded, however.  *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).  Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden.  *Id.*  In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).  The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as

it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted).

## IV. DISCUSSION

Defendants claim the defense of qualified immunity as to the claims against them. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established;" and (3) whether the official's actions were objectively unreasonable "in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citation omitted).

For a right to be clearly established, "at the time of the officer's conduct, the law [must have been] 'sufficiently clear' such that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by

7

showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft*, 563 U.S. at 741). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is with these standards in mind that the Court considers Plaintiff's allegation that he was denied adequate medical care.

It is well settled that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

The Sixth Circuit has recognized that the existence of a sufficiently serious medical need may not be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899-900 (6th Cir. 2004). In such situations, the Sixth Circuit requires the plaintiff to produce "verifying medical evidence" of "minor maladies or non-obvious complaints of a serious need for medical care." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (quoting *Blackmore*, 390 F.3d at 898).

A.  **Alleged Finger Injury**

Initially, the Court notes that Plaintiff has not submitted medical evidence in support of his claim against Defendants, as it pertains to his alleged finger injury, and therefore, he has not met his burden to set forth facts establishing a constitutionally recognizable denial of medical care claim. Second, the Court notes that Plaintiff did not file a medical request notifying staff that he injured his finger on May 17, 2017 [Doc. 34-1 ¶ 5; Doc. 34-2 ¶ 5],

9

and the one unrelated medical request Plaintiff did make regarding his finger contained no request for any pain reliever [Doc. 34-1 p. 5; Doc. 34-2 p. 5]. Therefore, Plaintiff has not demonstrated that the pain in his finger was so serious that any alleged denial of care resulted in unnecessary or wanton infliction of pain or posed a serious risk of harm for him.

Further, Plaintiff did receive treatment for his finger because of Defendants' actions. Defendants referred Plaintiff to MCDC's physician, who performed an x-ray of Plaintiff's hand that produced negative results [Doc. 34-1 ¶ 6; Doc. 34-2 ¶ 6; Doc. 34-5; Doc. 37-1]. Therefore, the care Plaintiff received by Defendants cannot fairly be seen as "so woefully inadequate as to amount to no treatment at all." *Alspaugh*, 643 F.3d at 169. Accordingly, Defendants are entitled to summary judgment as to this issue.

### B. Alleged Shoulder Injury

Plaintiff additionally fails to produce any evidence showing a sufficiently serious injury or pain in his shoulder, such that any failure to treat the alleged injury resulted in unnecessary pain or posed a serious risk of harm to Plaintiff. Therefore, Plaintiff has failed to meet the objective prong of the deliberate indifference test regarding his alleged shoulder injury.

Moreover, Plaintiff did receive treatment for his shoulder injury. The evidence indicates that Defendants treated Plaintiff with pain medication upon receipt of Plaintiff's medical requests pertaining to his shoulder, and Defendants referred Plaintiff to the facility's treating physician [*See generally* Docs. 34-1 and 34-2]. Plaintiff ultimately received the MRI that he requested, and the results came back negative for significant injury [Doc. 37-2]. Therefore, Plaintiff cannot demonstrate that the medical care he

10

received as to his shoulder was so insufficient as to amount to no treatment at all, and Defendants are entitled to summary judgment with regard to this issue.

## V. FAILURE TO PROSECUTE AND COMPLY WITH COURT ORDERS

The Court additionally finds that Plaintiff failed to comply with this Court's Scheduling Order, which required him to submit a document entitled "Pretrial Narrative Statement" by September 28, 2020 [*See* Doc. 23]. Plaintiff was warned that failure to file the Pretrial Narrative Statement as ordered would result in the dismissal of his complaint [*Id.* at 2-3].

Further, Plaintiff failed to show good cause as to why this case should not be dismissed due to his repeated failure to update the Court of his address [*See* Doc. 41]. In response to the Court's order requiring Plaintiff to show cause why this case should not be dismissed for Plaintiff's failure to notify the Court that he had been transferred to Trousdale Turner Correctional Center, Plaintiff maintains that he has not failed to update his address because he is still housed at Trousdale Turner Correctional Center [Doc. 42]. Plaintiff's argument is groundless.

Accordingly, the Court alternatively determines that this case should be dismissed due to Plaintiff's willful failure to prosecute and comply with the Court's orders under Rule 41(b) of the Federal Rules of Civil Procedure. *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 362-63 (6th Cir. 1999).

11

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 34] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. All other pending motions are **DENIED** as moot. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE